IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIMOTHY E. NEFF, SR.,      CASE NO. 2:08-cv-831
                      CRIM. NO. 2:03-cr-008(1)
      Petitioner,        JUDGE JAMES L. GRAHAM
                      MAGISTRATE JUDGE E.A. PRESTON DEAVERS

v.

UNITED STATES OF AMERICA,

      Respondent.

ORDER and
REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the instant motion, Respondent's return of writ, Petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request for an evidentiary hearing is **DENIED.**

FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> In October 1999, Vincent Spinelli moved from Arizona to central Ohio. Spinelli knew how to cook methamphetamine, and, when he got to Ohio, he teamed up with a high school friend. Their plan was simple: Spinelli would cook the methamphetamine, and the friend would sell it. Once the operation was underway, the friend had only one customer, Timothy Neff, Sr. ("Neff, Sr."), who bought all the product himself. After Spinelli's friend died in an auto accident in December 1999, Spinelli began selling his product directly to Neff, Sr.

When Spinelli wanted a new location for his methamphetamine manufacturing operation, Neff, Sr. offered a Clarksburg, Ohio chicken farm that he was renting. The operation relocated to the chicken farm around February 2000. Meanwhile, Neff, Sr. and Spinelli wanted to increase the level of production, so they agreed that Neff, Sr. would have "his people go around and buy [the pseudoephedrine] pills" necessary to manufacture methamphetamine. 1 Joint Appendix ("J.A.") at 359 (1/13/04 Trial Tr. at 69). Under their new arrangement, Neff, Sr. covered the costs of the operation, Spinelli owned the equipment, and they agreed to split the proceeds from Neff, Sr.'s selling the product. Neff, Sr.'s son, Timothy Neff, Jr. ("Junior"), began to assist Spinelli at the chicken farm, where they were cooking methamphetamine approximately twice a week. These two weekly cooks yielded about five ounces per week. Spinelli and Junior continued using the chicken farm until around Easter 2000.

In the spring of 2000, Neff, Sr. arranged for the operation to move from the chicken farm to a camper on a farm near Darbyville, Ohio. Herman "Chip" Morrison lived on the farm, but Neff, Sr. supplied the camper. Morrison knew what Spinelli and Junior were doing in the camper because several times he had come out to the camper while they were cooking. Neff, Sr. and "his people" supplied the pseudoephedrine tablets. 1 J.A. at 374 (1/13/04 Trial Tr. at 84). At this time, the operation was producing about four ounces of methamphetamine in each of the two weekly cooks.

Around this time, the nature of the agreement between Spinelli and Neff, Sr. changed. They "reverted back" to the old way of doing things, in which Spinelli would manufacture methamphetamine on his own, covering the costs of the operation, and Neff, Sr. would purchase whatever product Spinelli manufactured. 1 J.A. at 377 (1/13/04 Trial Tr. at 87).

Generally, Spinelli and Junior would not cook in one place for more than two or three months before finding another location. Their next location was another trailer, again owned by Neff, Sr., but this time on property owned by Doug Betts. The operation remained there until about November 2000, when

2

Spinelli pleaded guilty to a state-law charge of methamphetamine possession.

In December 2000, Spinelli cooked methamphetamine at the Circleville, Ohio home of his girlfriend, who was also Neff, Sr.'s daughter. Production dipped at this point because only Spinelli was obtaining the necessary pseudoephedrine. Spinelli continued to provide Neff, Sr. with methamphetamine produced beyond Spinelli's needs. By then, Junior had gone on his own, and was no longer working with Spinelli.

In early 2001, Spinelli moved to New York and began to manufacture methamphetamine there, returning occasionally to deliver his product to Neff, Sr. at Neff, Sr.'s farm on London Road in Circleville, Ohio. At that time, Spinelli was making about eight ounces per month. This arrangement lasted until January 2002, when Spinelli was arrested. Spinelli began to cooperate with the government.

Also in early 2001, Junior and Neff, Sr. had a falling out that led the two of them to quit dealing with each other. With Spinelli and Junior no longer part of the operation, Neff, Sr. had to turn to others to help him manufacture methamphetamine. Neff, Sr. began producing the drug himself at various locations. For instance, he cooked methamphetamine at Tracy Brill's "pole barn" in Londonville, Ohio at least four times between May 2001 and June, 27, 2001, when authorities searched the location and arrested Tracy Brill. Neff, Sr. paid Brill rent, in the form of both cash and methamphetamine, for use of the pole barn. Neff, Sr. also produced methamphetamine at the chicken farm and at his own residence on London Road, which was referred to as "the farm," even though Neff, Sr. did not farm the land.

Others began to aid Neff, Sr.'s manufacturing operation. For instance, Jeff Fowler, a longtime friend of Neff, Sr., who lived in a camper on Neff, Sr.'s Circleville farm from July through October 2001, helped Neff, Sr. by collecting and processing pseudoephedrine tablets and also processing iodine and hydrogen peroxide into iodine crystals-a necessary ingredient in Neff, Sr.'s recipe. Fowler learned how to perform these tasks

3

from Neff, Sr. James Ramey performed the same tasks. Timothy Johnson and Brian Buskirk also processed pseudoephedrine tablets and sold the processed tablets to Neff, Sr. Numerous people, including Morrison, Fowler, Ramey, Kelly Lambert, Wade Martin, Joshua Brill, Kimberly Shelpman, and Jamie Barton, helped Neff, Sr. by procuring the various required chemicals. Additionally, Neff, Sr.'s other son, Jamie Neff ("Jamie"), delivered pseudoephedrine tablets to Neff, Sr.

On September 18, 2001, three people took turns using a single Mastercard to purchase a total of fifteen boxes of pseudoephedrine from a Wal-Mart store in Circleville, in five separate transactions. Jamie signed two of the five receipts. The record does not show what happened to that pseudoephedrine after the purchasers left the store.

In June 2002, Wade Martin began manufacturing methamphetamine with Neff, Sr. at the London Road farmhouse. This continued for three or four months. In late 2002, Neff, Sr. began processing pseudoephedrine tablets in a garage at his friend Mark DeLong's house in Circleville.

B. Procedural Background

On January 23, 2003, the federal grand jury for the Southern District of Ohio returned an indictment naming twenty-seven defendants and charging each of them with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 846 by conspiring to manufacture more than five grams of methamphetamine. The indictment contained thirty-one total counts, and charged various members of the conspiracy with various other substantive offenses. On April 4, 2003, the grand jury returned a superseding indictment dropping one defendant (James Ramey) and alleging the same conspiracy, but containing only twenty-eight counts. As relevant here, the superseding indictment charged:

Neff, Sr. with one count of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 846 (Count 1); two counts of manufacturing methamphetamine, in violation of 21 U.S.C. §§

4

841(a)(1), 841(b)(1)(c), and 18 U.S.C. § 2 (Counts 10 and 28); and one count of possessing chemicals used to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6) and 18 U.S.C. § 2 (Count 27).

***

Hettinger pleaded guilty to the conspiracy count, and the government dropped the manufacturing count. The remaining defendants-appellants went to trial, which began on January 12, 2004, and ended on January 30, 2004.

After the close of evidence... Neff, Sr. moved to dismiss the count charging him with manufacturing methamphetamine on or about August 22, 2002, noting that the government had submitted evidence regarding manufacture around August 8, but nothing regarding August 22. The district court rejected this motion, noting that the indictment charged Neff, Sr. with manufacturing methamphetamine "on or about" August 22.

Before the district court submitted the case to the jury, the defendants offered various other motions.... [E]ach defendant orally moved the court for a judgment of acquittal under Rule 29, and the trial court rejected these motions.

Ultimately, the jury (1) convicted Neff, Sr. on all counts (Counts 1, 10, 27, and 28)[.]

***

Neff, Sr. appeals from his convictions on Counts 1 (conspiracy) and 28 (manufacturing methamphetamine). He offers two arguments against his conviction on Count 1, specifically, that a fatal variance between the indictment and the trial evidence demands reversal and that the district court erred by failing to instruct the jury on multiple conspiracies. Additionally, Neff, Sr. appeals his sentence.

*United States v. Hettinger*, 242 Fed.Appx. 287, 2007 WL 1748163 *1-*3 (6th Cir. June 18, 2007).

On June 18, 2007, the Court of Appeals affirmed Petitioner's convictions and sentence. *Id.*

5

On October 15, 2007, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari*. *Neff v. United States*, 552 U.S. 984 (2007).

On September 2, 2008, Petitioner filed the instant *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  He asserts as follows:

> 1. Failure by the court reporter to provide transcript of closing arguments to appellate counsel.
>
> 2.  Failure by court reporter to provide verbatim recording of an open court conference on 1/26/2004 a.m.
>
> 3.  Presentation of inerrant Interrogatory Form #1 into the official record.
>
> 4.  Inaccurate transcription of the "jury instructions" as well as the "polling of the jury."

It is the position of the Respondent that petitioner is attempting to relitigate claims already raised on direct appeal, and that his claims are without merit.

## MERITS

Petitioner complains that he was denied a fair appeal because portions of his trial transcripts from jury proceedings conducted on January 26, 2004, were not transcribed, and because other portions of the jury transcripts and Interrogatory Form #1 are inaccurate or fabricated.  *See Petition; Traverse*.  These claims will be considered together here.

Specifically, in Claim One, petitioner asserts that he was denied a fair appeal because the court reporter failed to timely transcribe closing arguments.  *See Petition; Traverse.*  Petitioner complains that transcripts of January 26, 2004, day eight of his jury trial, were not submitted until June 23, 2006, and after the filing of his appellate brief was

due, impeding appellate counsel from effectively investigating Petitioner's allegation that improper interrogatory forms were submitted to the jury or made a part of the record.  In Claim Two, Petitioner asserts that the court reporter failed to transcribe proceedings conducted on January 26, 2004, and that this transcript would have shown an agreement between the parties to submit interrogatories to the jury which indicated that petitioner could only be found guilty on conspiracy to manufacture between 5 to 20 grams of methamphetamine, and no greater amount.  In Claim Three, Petitioner asserts that Interrogatory Form #1, which indicates that the jury found petitioner guilty of Count One, conspiracy to manufacture methamphetamine, and unanimously found the quantity involved to be more than five (5) grams of methamphetamine or more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine is "inerrant in its wording and is not the original form presented to, and signed by the jury in this case." *Petition*, at 8.  Petitioner alleges that, contrary to the verdict forms that are a part of the record, the Court ordered each juror to receive and sign an individual verdict form.  He further complains that the Interrogatory Form is not properly worded to reflect the "over 5 and under 20 gram finding" purportedly agreed to by the parties.  *Id*.  Finally, in Claim Four, Petitioner asserts inaccurate transcriptions of jury instructions and polling of the jury.

> [T]hese disputed transcriptions are not in accordance with the actual verbatim instruction, and dialogue presented in open court during these proceedings.  But rather reflect an inerrant subjugation of the facts towards the disputed interrogatory findings.

*Petition*, at 9.  Petitioner contends that his  Objection #3 to the PreSentence Investigation

7

Report, supports this claim.

As a preliminary matter, the Court notes that all of Petitioner's claims are apparent from the face of the record, and, therefore, should have been raised on direct appeal, but were not. Petitioner has waived these claims for federal habeas corpus review absent a showing of cause and prejudice. *See United States v. Frady*, 456 U.S. 152, 167 (1982). Petitioner has not established cause and prejudice for his failure to raise his claims on direct appeal.

Even if Petitioner had not waived his claims, the Court finds that his petition has no merit. First, Petitioner contends that the verdict and Interrogatory Form(s) are fabricated and fail to reflect an untranscribed agreement of the parties made on January 26, 2004, in which the parties and presumably the Court allegedly agreed that he would be held responsible solely for 5 to 20 grams of methamphetamine on Count 1 of the Indictment. This contention is plainly contradicted by the record. The District Judge instructed the jury in relevant part as follows:

> With regard to each defendant, in Count One, if you find the defendant guilty, you will see on the form you will then go to an attached interrogatory or additional written question. So with regard to Timothy Neff, Sr., there is interrogatory no. 1 which I will read as follows:
>
> If you determine that Timothy Neff, Sr., is guilty of Count One, conspiracy to manufacture methamphetamine, do you unanimously find beyond a reasonable doubt that the quantity was – and you will check only one of two boxes. The first one says, more than 5 grams of methamphetamine or more than 50

> grams of a mixture or substance containing a detectable amount of methamphetamine, that's box one; or in box two, less than 5 grams of methamphetamine or less than 50 grams of a mixture or substance containing a detectable amount of methamphetamine – and this also will be unanimous – the foreperson will sign on the front page and date it, and all the other jurors will sign on the second page.

*Transcripts*, January 27, 2004, at 42.  None of the parties objected to this instruction.

Petitioner does not allege the ineffective assistance of counsel.  His allegations that portions of the official record in this case are false, however, necessarily implicate a collusion against him between the Court, the government, the court reporter, as well as the defense attorneys in this case.  These allegations are not worthy of credit in these proceedings.

> It is well-established that a " 'presumption or regularity ... attaches' to state trial transcripts." *Van Stuyvesant v. Conway*, No. 03 Civ. 3856, 2007 WL 2584775, at *37 n. 34 (S.D.N.Y. Sept. 9, 2007) (quoting *Bankhead v. LaVallee*, 430 F.Supp. 156, 159 n. 4 (E.D.N.Y.1977)); *see also, United States v. Bradshaw*, No. 99-5724, 2000 WL 1464677, at *1 (6th Cir. Sept. 22, 2000); cf. Parke v. Raley, 506 U.S. 20, 29-30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (presumption of correctness attaches to state criminal judgments); 28 U.S.C. § 753(b), para. 5 (certified transcripts in federal court proceedings are presumed accurate). Here, "[b]esides his own speculation, [petitioner] does not present any reason why [the Court] should suspect these transcripts to be inaccurate." *Norris v. Schotten*, 146 F.3d 314, 333 (6th Cir.1998); *see also, Haynes v. McCaughtry*, No. 90-2880, 1992 WL 55493, at *2 (7th Cir. Mar.24, 1992) ("Court transcripts are presumed correct, and [petitioner's] unsupported assertion cannot overcome that presumption.").

*Williams v. Romanowski,* 2008 WL 6875005 *42 (E.D. Mich. Jan. 29, 2008); *see also Abatino v. United States,* 750 F.2d 1442, 1445 (9th Cir. 1985)("The reporter's transcript of a trial is

presumed to be accurate.")(citations omitted).

On August 30, 2004, and prior to sentencing, the court reporter filed seven volumes of trial transcripts. These did not include any proceedings from January 26, 2004. (Doc. No. 595.) On June 23, 2006, the court reporter filed one volume of transcripts from proceedings conducted on January 26, 2004. This transcript filed on June 23, 2006 relates to the introduction of trial exhibits and does not include any further proceedings conducted on that day, namely closing arguments. Nonetheless, this fact does not support petitioner's conclusion of an apparent collusion and fabrication, but instead appears merely to indicate that appellate counsel did order the transcripts of such portions of the record for purposes of the appeal. Further, apart from his allegation of fabrication, Petitioner sets forth no potentially meritorious issues that could have been raised on appeal, but were not, due to his inability to review the transcript of closing arguments. Moreover, the Cuort finds no merit to Petitioner's claim that the jurors were required, but did not, individually sign the verdict forms. At trial, the Court instructed all jurors to sign the second page of the Verdict and Interrogatory Forms, which each juror did, as is reflected on the forms in the record before this Court. *(See* Doc. Nos. 461, 471, 472.)

Petitioner correctly notes that his attorney objected to the Probation Officer's recommendation that he be held accountable for 13.26 kilograms of methamphetamine (at 3 ounces of methamphetamine per week for three years). His defense counsel asserted that 4.36 kilograms more accurately reflected the relevant conduct for which petitioner should be held responsible. *PreSentence Investigation Report*, at ¶105; *Objection #3 to PreSentence*

10

*Investigation Report.*  But this objection fails to support Petitioner's claim of any agreement by the parties regarding the amount of methamphetamine that would be attributed to him for sentencing purposes.  As noted by Respondent, the United States Court of Appeals for the Sixth Circuit affirmed the District Court's determination of the amount of methamphetamine for which petitioner would be held accountable:

> The district court concluded that Neff, Sr. was most likely responsible for manufacturing 5.6 kilograms of methamphetamine. It sentenced him using the base offense level applicable under Guideline § 2D1.1(c)(2), which applies to cases involving between five and fifteen kilograms of methamphetamine. It calculated the 5.6-kilogram figure as follows: (1) 2.9 kilograms attributable to Spinelli's manufacturing on Neff, Sr.'s behalf; (2) 600 grams that Timothy Johnson delivered to Neff, Sr.; and (3) 2.1 kilograms that Neff, Sr. manufactured himself. These were conservative figures; the district court calculated the amount Spinelli manufactured on the basis of one ounce per week, rather than the five-to-eight ounces per week to which Spinelli testified. Because the preponderance of the evidence offered at trial supports the conclusion that Neff, Sr. was responsible for substantially more than 5.6 kilograms of methamphetamine, he cannot establish clear error.
>
> Further, even if we were to accept Neff, Sr.'s quibbles with the district court's calculations, they would not entitle him to resentencing. Neff, Sr. maintains that the district court's calculations failed to take into account Spinelli's three-week break from manufacturing following his friend's death. Additionally, Neff, Sr. argues that the quantity that Johnson delivered should have been calculated to be 567 grams and that a conservative calculation of Neff, Sr.'s own manufacturing is 2.041 kilograms. These three purported errors total less than six-tenths of a kilogram, so even if we were to agree with Neff, Sr., he would still be responsible for over five kilograms, and the district court's application of Guideline § 2D1.1(c)(2) would still be appropriate.

*United States v. Hettinger,* 2007 WL 1748163 *8 (6th Cir. June 18, 2007). Petitioner may not now relitigate this issue here. *DuPont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996).

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Because the Court finds no merit to his claims, Petitioner's request for an evidentiary hearing is **DENIED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985);*United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse

12

decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

   *s/ Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge

Date: July 14, 2010